FILED '09 MAY 20 12:41 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN K. STEWART,                          CV 07-6282-TC

        Plaintiff, and                      FINDINGS AND
                                            RECOMMENDATION
COLUMBIA SEAPLANE PILOTS,

        Plaintiff-Intervenor,

    v.

UNITED STATES OF AMERICA, acting
by and through its DEPARTMENT OF
AGRICULTURE, by and through the
UNITED STATES FOREST SERVICE,

        Defendant, and

McKENZIE FLYFISHERS,

        Defendant-Intervenor.

                Defendant.

COFFIN, Magistrate Judge:

        On April 16, 2007, the United States Forest Service (USFS)

issued a Decision Notice adopting Forest Plan Amendment #47 which

1 - FINDINGS AND RECOMMENDATION.

restricts boat motor use on Waldo Lake to electric motors only
(with exceptions for the administrative use of internal
combustion motors when approved by the Forest Supervisor).  The
amendment at issue also prohibits floatplanes from using the
surface of Waldo Lake.  Plaintiff, a frequent visitor to Waldo
Lake who has used internal combustion motorized craft on the lake
and who desires to continue such use in the future, brings this
challenge to the Decision (and thus Amendment 47) under the
Administrative Procedure Act (APA), 5 U.S.C. § § 701-06.[1]
Essentially, plaintiff contests jurisdiction of the USFS to
regulate boating activity on the surface waters of Waldo Lake.

## STANDARD OF REVIEW

The APA provides a reviewing court with a narrow scope of
review.  Under the APA, a court may reverse an agency action only
if the action is "arbitrary, capricious, and an abuse of
discretion, or otherwise contrary to law."  5 U.S.C. § 706(2)(a).
"An agency's action is arbitrary and capricious if the agency
fails to consider an important aspect of a problem, if an agency
offers an explanation for the decision that is contrary to
evidence, if the agency's decision is so implausible that it
could not be ascribed to a difference in view or be the product
of agency expertise, or if the agency's decision is contrary to

---

[1] Plaintiff has abandoned all other claims in this case.

the governing law.  <u>Lands Council v. United States Forest

Service</u>, 395 F.3d 1019, 1026 (9th Cir. 2004).


**BACKGROUND**

     The following facts are undisputed:

1.  Waldo Lake is located entirely within Oregon.

2.  The State of Oregon was admitted into the Union on February

14, 1859 on an "equal footing"  with the original thirteen

States.

3.  Waldo Lake is 8.6 miles long and 2.8 miles wide and averages

128 feet in depth with a surface elevation of 5414 feet (1650

meters) above mean sea level.  Along its major axis the surface

of Waldo Lake is over one quarter mile wide at its narrowest

point.  The Lake is more than 30 feet deep (10 meters) for a

width of more than 1640 feet (0.5km) at the shallowest reach on

its north and south axis.

4.  The dimensions of Waldo Lake, so far as they affect its

ability to be navigated as a highway for commerce using the

accustomed means for trade and travel upon the water at the time

of Oregon Statehood, have remained unaltered by any natural

condition from the time of statehood up to the present.

5.  Waldo Lake may be traversed by vessels of the same dimensions

as any vessels used in commerce at the time of Oregon Statehood.

3 - FINDINGS AND RECOMMENDATION.

6.  The Waldo Lake Irrigation and Power Company used boats,
barges and rafts to transport personnel, machinery, supplies and
equipment from the northeastern shore of Waldo Lake to Klovdahl
Bay as part of a commercial enterprise in the early 1900s.

7.  USFS used boats to transport personnel, supplies and
equipment to repair the works erected at Klovdahl Bay.

## ISSUES

From these facts, plaintiff Steven Stewart argues that the
Court should find that the Forest Service lacks jurisdiction to
regulate Waldo Lake because the Lake is not federal property.
Plaintiff contends that the State of Oregon, not the  United
States, holds title to Waldo Lake.  See United States v. Oregon,
295 U.S. 1, 14, 55 S. Ct. 610, 615 (1935):

> [u]pon the admission of a State to the Union,
> the Title of the United States to lands
> underlying navigable waters within the United
> States passes to [the state], as incident to
> the transfer to the state of local
> sovereignty ...."

Id.

The central theme of plaintiff's claim is that the
undisputed facts concerning the dimensions and historical use of
Waldo Lake easily satisfy the legal test of "title navigability"
such that ownership of Waldo Lake must be recognized as having
automatically passed to the State of Oregon when it entered the

4 - FINDINGS AND RECOMMENDATION.

Union in 1859.  Accordingly, plaintiff contends that only the
State may regulate motorboat use on the lake and the State has
not adopted its own version of Amendment 47 and thus the internal
combustion motorboat ban is a nullity.

The USFS counters with several arguments:

First, the Forest Service contends that the Quiet Title Act
is the exclusive mechanism by which a party can challenge a claim
of title by the United States.  As plaintiff asserts no ownership
interest himself in Waldo Lake, only the State of Oregon would
have standing, through a Quiet Title action,  to contest the
Forest Service's assertion of jurisdiction over Waldo Lake.
Accordingly, the government argues that, insofar as plaintiff's
challenge is focused on whether the State owns Waldo Lake as
opposed to the United States, that claim may not be adjudicated
in the context of an APA claim.

Secondly, the government contends that, to the extent the
court does review the jurisdiction/ownership issue in this
action, the court is obligated to defer to the USFS "policy" that
a water body located within or  adjacent to the boundaries of a
national forest is deemed "non-navigable" unless and until a
federal court decides otherwise (through a Quiet Title action).

Third, the government asserts that, assuming arguendo that
Waldo Lake is navigable and thus title lies with the  State, the
Forest Service may nonetheless regulate activity on the lake

5 - FINDINGS AND RECOMMENDATION.

pursuant to the "Property Clause" of the Constitution (Art. IV,
Sec 3, Clause 2).

Intervenor Columbia Seaplane Pilots generally joins in
plaintiff Stewart's arguments and raises no additional issues.
Intervenor McKenzie Flyfishers, however, presents one additional
theory to support Amendment 47 that is not advocated or otherwise
joined in by the Forest Service:  it contends that 16 U.S.C. §
1609(a) authorizes the USFS to regulate Waldo Lake even if title
rests in the State as the lake would then be considered  "other
lands, waters, or interest therein <u>which are administered by the
Forest Service</u> ..." <u>See</u> <u>Id.</u> (emphasis added).

**DISCUSSION**

1.   **NAVIGABILITY**

Plaintiff's briefing accurately sets forth the general legal
principles that govern the navigability issues pertinent to this
case and I will set them forth as follows:

> All navigability determinations begin with
> the same principle:
> Those rivers must be regarded as public
> navigable rivers which are navigable in fact.
> And they are navigable in fact when they are
> used, **susceptible of being used,** in their
> ordinary condition, as highways for commerce,
> over which trade and travel are **or may be
> conducted** in the customary modes of trade and
> travel on water...

The Daniel Ball, 77 U.S. 557, 563 (1870)(emphasis added)(Grand
River MI, admiralty jurisdiction).  The standard announced
applies with equal force to inland waters.  See The Propeller
Genesee Chief v. Fitshugh, 53 U.S. 443, 457 (1851)(Lake Ontario,
admiralty jurisdiction).  The fact that the waterway is a lake
entirely within the boundaries of a single state does not change
the standard for determining navigability.  See United States v.
Holt State Bank, 270 U.S. 49, 56 (1926)(Mud Lake, MN, title).
The test for navigability of title is not one of past or present
use, but one of the possibility of use.  See Economy Light and
Power Co. v. United States, 256 U.S. 11, 122-123 (1921)(Des
Plaines River, IL, navigable water of the United States for
purpose of agency regulation).  The fact that conditions at the
time of Statehood do not yet  give rise to commerce on the water
or that the settlements to provide destinations have not yet
arisen is of no consequence if the physical characteristics of
the water way will support use of water as a highway should the
need arise.  See United States v. Utah, 283 U.S. 64, 82 (1931)
(Colorado River and tributaries, UT, navigability for title).

     The test of whether a water body is navigable in its
"ordinary condition" depends upon the characteristics of the
waterway itself;, that is, its depth , its breadth, its length,
the speed of the current and similar factors.  See Utah v. United
States, 403 U.S. 9, 12 (1971)Great Salt Lake, UT, navigability

for title.) It is these physical characteristics of the water
body that determine navigability and not the past or present
state of settlement, the existence of roads or railroads leading
to the water or other circumstances.  See United States v.
Appalachian Electric Power Co., 311 U.S. 377, 407-408 (1940)(New
River, VA, federal regulation.)

     For waters to be "navigable waters of the United States" for
the purposed of admiralty jurisdiction or for the purpose of
regulation under the Commerce Clause, the water body in question
must itself or in connection with other navigable waters form an
uninterrupted highway over which commerce might be carried on
among several states or with foreign nations.  See Davis v.
United States, 185 F.2d 938, 942-943 (9th Cir. 1950), cert. den.
340 U.S. 392 (1951)(Lake Tahoe, CA/NV, federal regulation of
motorboats).  In the absence of such a connection, the navigable
water way is a navigable water of the State and not the United
States.  See Sierra Pacific Power Company v. Federal Energy
Regulatory Commission, 681 F.2d 1134, 1138 (9th Cir.
1982)(Truckee River, NV, FERC licensing); see also,  Minnehahah
Creek Watershed District v. Hoffman, 597 F.2d 617, 623(8th Cir.
1979) (Lake Minnetonka, MN, federal agency regulation).

     If waters are navigable at the time of Statehood, title to
the bed and banks is in the State regardless of whether those
waterways are navigable waters of the United States.  See Utah

Division of State Lands v. United States, 482 U.S. 193, 196,

198(1987)(Lake Utah, UT, title); Utah v. United States, supra

(Great Salt Lake, UT, title).  See Plaintiff's consolidated reply

brief in support of its motion for summary judgment, p.p. 14-16.

    In sum and in short, if Waldo Lake was navigable in 1859,

title to the lake passed to Oregon with its admission to the

Union.  If non-navigable, title remained with the United States.

The test of navigability for title purposes includes not just

whether the body of water was actually used for commerce at the

time of statehood, but also whether it was susceptible for such

use.  To quote the Supreme Court:

> The question of that susceptibility in the
> ordinary condition of the rivers, rather
> than of the mere manner or extent of actual
> use, is the crucial question.  The government
> insists that the uses of the rivers have been
> more of a private nature than of a public
> commercial sort.  But, assuming this to be
> the fact, it cannot be regarded as
> controlling when the rivers are shown to be
> capable of commercial use.  The  extent of
> existing commerce is not the test.  The
> evidence of the actual use of streams, and
> especially of extensive and continued use for
> commercial purposes, may  be most persuasive,
> but, where conditions of exploration and
> settlement explain the infrequency or limited
> nature of such use, the susceptibility to use
> a highway of commerce may still be
> satisfactorily proved.

United States v. State of Utah, 283 U.S. 64, 82 (1931).

2.    **The Quiet Title Act is not a bar to considering the**
**sufficiency of the basis for the USFS conclusion that it has**
**jurisdiction to regulate Waldo Lake**

The applicability of the Quiet Title Act (28 U.S.C. § 2409a)
(QTA) to this action has been the subject of extensive briefing.
In part, plaintiff seeks a ruling that Waldo Lake is owned by the
State of Oregon.  The government correctly counters that the QTA
provides the appropriate procedural mechanism for a determination
of title adverse to the United States.  See Shawnee Trail
Conservancy v. United States Department of Agriculture, 222 F.3d
383 (7th Cir. 2000).  Thus, to the extent plaintiff seeks a
judicial determination under his APA claim that Oregon owns Waldo
Lake, such is unavailable to him.

But this does not mean that the USFS claim of jurisdiction
to regulate activities on the surface of the Lake is immune from
review under the APA.  What remains is the question of whether
the Forest Service had a sufficient basis on which to assert
jurisdiction to regulate activities on the Lake. It is not
uncommon for agencies which manage federal lands and water to
address preliminary issues of ownership to ascertain the extent
and scope of their jurisdiction.  Here, however, the USFS
declined to make any administrative factual findings on the issue
of Waldo Lake's "navigability", reasoning as follows:

> Congress, not the administrative agencies,
> has authority to dispose of property
> belonging to the United States.  U.S. Const.,
> art IV, §3, cl. 2.  The  Equal Footing
> Doctrine and the Submerged Lands Act provide
> that title to lands beneath title-navigable
> waters are assigned to the state within whose
> borders they are located.  43 U.S.C. § 1311.
> Under the Submerged Lands Act, a
> determination that a water body is title
> navigable results in the vesting of title in
> the state.  Thus, while title-navigability is
> a fact-based inquiry, the factual
> determination has an automatic legal impact
> on property ownership. For a water body, such
> as Waldo Lake, that is wholly contained on
> federal land, a formal determination of
> title-navigability would result in the
> "disposal" of federal property.  Congress has
> not authorized the Forest Service to make
> such determinations.  The Department of
> Agriculture's policy conforms to this
> limitation on executive power and prescribes
> that a water body on federal property can be
> determined title-navigable in court finding
> before the government cedes title to property
> within a national forest.  Second, the record
> does not show conclusively that Waldo Lake is
> title -navigable.

Government's Memorandum in Response to Plaintiff's Motion for

Summary Judgment (#108), p.p. 13-14.

However, the government's assertion that an administrative

determination of title-navigability would have an automatic legal

impact on property ownership is unsupported by any authority.  By

analogy, the government employs surveyors who plot the boundaries

of natural forests, parks and other public lands.  The surveys do

not "automatically" dispose of title disputes.  A Quiet Title

action would still be required if an adverse claimant disputed

the survey and claimed title to land included by a survey within

the boundary of a national forest.  Conversely,  a survey that erroneously places public lands in private hands would not in and of itself transfer title.[2]

When it comes to water bodies, the USFS policy differs from other land management agencies in its approach to this issue. For example, the Army Corps of Engineers has adopted a series of regulations defining "navigable waters of the United States." In pertinent part, the regulations are set forth from 33 C.F.R.:

> §329.1  Purpose.
>     This regulation defines the term 'navigable waters of the United States' as it is used to define authorities of the  Corps of Engineers.  It also prescribes the policy, practice and procedure to be used in determining the extent of the jurisdiction of the Corps of Engineers and in answering inquiries  concerning 'navigable waters of the United States.'  This definition does not apply to authorities under the Clean water Act which definitions are described under 33 C.F.R. parts 323 and 328.
>
> §392.2  Applicability
>     This regulation is applicable to all Corps of Engineers districts and divisions having civil works responsibilities.
>
> 329.3   General Policies
>     Precise definitions of  'navigable waters of the United States' are ultimately dependent on judicial interpretation and cannot be made conclusively by administrative agencies.  However, the policies and criteria contained in this regulation are in close

---

[2]I note, for example,  that in 1971 the Willamette National Forest prepared a list of the lakes the acreage of which was included in the computation of the acreage of the Willamette National Forest.  For whatever reason, Waldo Lake was not included.  This did not have an "automatic legal impact."

conformance with  the tests used by Federal
courts and determinations made under this
regulation are considered binding in regard
to the activities of the Corps of Engineers.

329.4  General definition.
     Navigable waters of the United States
are those waters that are subject to the ebb
and flow of the tide and/or are presently
used or have been used in the past, or may be
susceptible for use to transport interstate
or foreign commerce.  A determination of
navigability, once made, applies laterally
over the entire surface of the waterbody, and
is not extinguished by later actions or
events which impede or destroy navigable
capacity.

329.5  General Scope of determination.
     The several factors which must be
examined when making a determination whether
a waterbody is a navigable  water of the
United States are discussed in detail below.
Generally, the following conditions must be
satisfied:
  (a) Past, present of potential presence of
interstate foreign commerce;
  (b) Physical capabilities for use by
commerce as in paragraph (a) of this section;
and
  (c) Defined geographic limits of the
waterbody.

See also, Loving v. Alexander, 548 F.Supp.  1079 (W.D. VA

1982), aff'd 745 F.2d 861 (4th Cir. 1984)(Corps asserted

regulatory jurisdiction over a river based on its administrative

finding of navigability and such agency action was subject to

judicial review under the APA).

See also, Wilderness Society v. Carruthers, 1986 WL 15757

(D.D. C.), FN. 5 at p.p. 7-8 (noting that lands beneath navigable

waters vested in the state at the time of statehood  and that

"BLM makes initial navigability determinations, but these are subject to court challenges.")  And see 43 C.F.R. § 2650.5-(b)(3).

The Forest Service contends, however, that it lacks the statutory authority to make a navigability determination.  Thus, it relies on  a "policy" it has had for some 20 years to the effect that the agency will deem a waterbody to be non-navigable unless and until a challenging party proves navigability (through the QTA).  The policy, if valid, would have the effect of excluding any challenge to the Forest Service's exercise of regulatory authority over Waldo Lake except by the State.

The policy in essence is a presumption - it is presumed that a body of water is non-navigable if it lies within or adjacent to the geographical boundary lines of a national forest.  This presumption may only be overcome by a federal court ruling in a Quiet Title Action.

The issue for review then, boils down to whether the presumption is a sufficient basis on which the Forest Service may exercise regulatory authority over Waldo Lake.  If so, Amendment 47 survives plaintiff's challenge.  If not, the court will consider the alternative arguments in support of jurisdiction or whether the Forest Service should reconsider the Amendment. Either way, this court is not the forum for determining the

ultimate question of whether Oregon or the United States has
title to Waldo Lake and will not undertake that inquiry.


3.  **The Presumption**

I am not persuaded by the government's argument that the
Forest Service lacks what the Corps of Engineers (and presumably
the BLM as well) has  —i.e., authority to make initial
determinations regarding navigability.  The government cites no
caselaw in support of this assertion, but simply points out that
the Corps determines navigability pursuant to the Rivers and
Harbors Act, 33 U.S.C. § 401 and then contends that the Forest
Service does not have a comparable statutory authority.  However,
16 U.S.C. §1604 and  § 1609 authorize the Forest Service to
develop and maintain land and resource management plans for units
of The National Forest System and define the National Forest
System to consist of units of federally owned forest, range, and
related lands throughout the United States.  The development of
managerial plans for federally owned forests would necessarily
implicate authority to make factual determinations regarding
which forests are "federally owned."  For example, in part 242
of 36 C.F.R., (which concerns public lands in Alaska) the Forest
Service defines "federal lands" to mean "lands and waters and
interest therein the title to which is in the United States,

including navigable and non-navigable waters in which the United

States has reserved water rights." 36 C.F.R. § 242.4.  Obviously

a factual inquiry would have to be made to ascertain which waters

and lands meet this criteria.

Moreover, it is a dubious proposition that an agency

charged with managing public lands has the authority to 'presume'

that a body of water is non-navigable and thus within the units

of federally owned forest land it is charged with managing but is

somehow precluded from conducting a factual inquiry into the

matter.  This approach seems based on several  flaws in the

government's logic:  first, the Forest Service repeatedly argues

that its factual determinations would have an "automatic  legal

impact on property ownership."  This is unpersuasive.  The

agency's initial determination of navigability would still be

subject to  review by the courts through a Quiet Title Action if

the Department of Justice or other appropriate government

officials disagreed with the agency's conclusion and continued to

assert that title remains in the United States.  See, e.g., 33

C.F.R. § 329.3 (providing that the Corps of Engineers

navigability determinations are binding on the Corps but

ultimately dependent on judicial interpretation).   The second

fallacy is that an agency determination of title navigability

would result in the disposal of federal property.  If , however,

Waldo Lake is in fact title navigable, it has not been federal

property since 1859 – it was disposed of back then when Oregon was admitted to the Union; it will not be disposed of now simply because an  agency conducts a factual inquiry into the ownership issue which may cause the United States  to recognize historical reality.[3]

Thus I do not agree that the Forest Service is precluded from making an  initial factual determination of the navigability of Waldo Lake.  Had it made factual findings,  those findings would be entitled to substantial deference under an APA review. See generally, e.g., Darrin & Armstrong Inc. v. United States Environmental Protection Agency, 431 F.Supp 456 (N.D. Ohio 1976), Recording Industry Ass'n Of America v. Copyright Royalty Tribunal, 662 F.2d 1 (D.C. Cir. 1981).  However, since the agency based its decision on the presumption, I must now examine the presumption to determine whether the agency's reliance on it was valid or was "arbitrary and carpricious."  Lands Coucil, supra.

The basis for the presumption, in part, is the burden of proof which would apply in a Quiet Title Action.  According to the government, if Oregon were to file such an action, the State as plaintiff would have the  burden to prove navigability.[4]  Thus

---

[3] One must not lose sight of the fact that there was a reason Congress enacted the Submerged Lands Act.  There is nothing amiss about an agency's recognition of navigable waters belonging to the State.  It is what Congress intended.

[4] Of course, if the United States desired, it could adjudicate the Waldo Lake controversy by filing a quiet title claim against the State of Oregon. This is precisely what the government did with respect to other bodies of water  in United States v. Oregon, supra.  Under that scenario, the

17 - FINDINGS AND RECOMMENDATION.

the Forest Service applies a presumption of non-navigability to
the issue of Waldo Lake.

As observed by the authors of McCormick on Evidence, Vol. 2,
p. 270:

> Many writers [are] of the view that the
> better rule for all presumptions would
> provide that anything worthy of the name
> 'presumption' has the effect of fixing the
> burden of persuasion on the party contesting
> the existence of the presumed fact.

Had this been the effect of the presumption herein -i.e.,
that it allocated the burden of persuasion on the issue of
navigability to plaintiff- this court may well have found such to
be a reasonable allocation of the burden at the administrative
proceedings.  However, the presumption at issue here went far
beyond allocating the burden of persuasion - the Forest Service
treated the policy as irrebutable in its administrative
proceedings  and did not weigh the evidence of navigability.  The
agency instead cited the absence of a federal court finding of
navigability in the context of a Quiet Title Action and thus
conclusively  presumed nonnavigability.

Given these circumstances, I find the case of <u>Leary v.
United States</u>, 395 U.S. 6, (1969) to be instructive.  <u>Leary</u> had
been convicted under the predecessor to the Controlled Substance
Act(21 U.S.C. § 176a), which required proof that the drug
(marijuana) had been imported.  To supply the proof, Congress

---

United States would have the burden of proving non-navigability.

created a statutory presumption that a person in possession of
marijuana either had imported it or knew it was imported.  The
Supreme Court rejected the presumption as unconstitutional, after
analyzing a trilogy of Supreme Court precedents[5] which set forth
the standard used to measure the validity of statutory
presumptions.  What emerged from the analysis was a ruling "that
a criminal statutory presumption must be regarded as 'irrational'
or 'arbitrary' and hence unconstitutional, unless it can at least
be said with substantial assurance that the presumed fact is more
likely than not to flow from the proved fact on which it is made
to depend."  Leary, 395 U.S. at 36.

While this is not a criminal case,[6] Leary is nonetheless
persuasive authority on how to analyze the rationality of the
irrebutable nature of the presumption herein.

Here, the "presumed fact" is that Waldo Lake is non-
navigable.  The "proved fact on which it is made to depend" is
that a federal court has not ruled otherwise.  There is simply no
rational connection between the presumed and proved facts, much
less one that is more likely true than not.  That Waldo Lake has
not been the subject of a Quiet Title Action and thus has not

---

[5]Tot v. United States, 319 U.S. 463 (1943); United States v. Gaines, 380 U.S. 63 (1965);and United States v. Romano, 382 U.S. 136 (1965).

[6]However, enforcement of Amendment 47 by citing violators into the petty offense system would directly implicate the Leary standard.

19 - FINDINGS AND RECOMMENDATION.

been determined to be navigable sheds no light whatsoever on whether it is therefore not navigable.[7]

Accordingly, insofar as the Decision to Adopt Amendment 47 was based on the policy or presumption that Waldo Lake is non-navigable, and insofar as the Forest Service declined to consider facts pertaining to the navigability of the lake, I find that the presumption by itself is not a sufficient ground on which to assert jurisdiction over the lake. To the contrary, such was arbitrary, capricious and an abuse of discretion.

## 4. **Property Clause**

As discussed above, the USFS adopted Amendment 47 on the presumption that the United States owns the submerged lands beneath any water body in or adjacent to a national forest if that water body has not been determined to be navigable in a formal quiet title action. The agency did not consider, much less base its decision on, the proposition that it had regulatory jurisdiction over Waldo Lake under the Property Clause even if the lake was navigable and thus the property of the State of Oregon. The government's failure to address this issue at the administrative proceedings all but precludes the exercise of substantive review of a newly developed alternative theory of

[7]As Congress has generally repealed the statute of limitations for states to file a QTA claim, Oregon's inaction thus far cannot be construed as a concession that the lake is non-navigable.

jurisdiction.  See,  United States v. Garner, 767 F2d 104, 123
(5th Cir. 1985)(rejecting post hoc rationalization for agency
action); Tanner's Council of America, Inc. v. Train, 540 F.2d
1188, 1194 (4th Cir. 1976)(citing "well-settled principle of
administrative law that agency action cannot be sustained on the
basis of information not relied upon by the Administrator and
disclosed in the record").

     Furthermore, Property Clause jurisdiction is dependent upon
specific enabling legislation by Congress.  See ,United States v.
Lindsey, 595 F.2d 5 (9th Cir. 1979). citing 16 U.S.C. §551
(providing authority to protect against destruction by fire and
other degradation upon the national forests), 16 U.S.C. §460 gg
(providing authority to regulate privately owned property within
the Hells Canyon Recreation Area), and 16 U.S.C. § 1281 (d)
(providing authority to regulate under the Wild and Scenic Rivers
Act); see also, United States v. Hells Canyon Guide Service,
Inc., 660 F.2d 735 (9th Cir. 1981), citing 16 U.S.C. § 551 and
1281(d); and Minnesota v. Block, 660 F.2d 1240 (8th Cir. 1981)
(upholding regulation over state-owned navigable waters pursuant
to Boundary Waters Canoe Area Wilderness Act).  The Forest
Service, in its briefing herein, points to statutes that
generally authorize the agency to manage the nation's forests,
such as 16 U.S.C. §1604  et seq.  Such does not delegate specific
authority to regulate non-federal property.  While 16 U.S.C. §
551 authorizes the Forest Service to make rules and regulations
21 - FINDINGS AND RECOMMENDATION.

to protect the public and national forests against destruction by
fire and degradations, Amendment 47 hardly seems to fit into this
category, and, unlike the Hells Canyon case, Congress has not
assimilated §551 into other legislation authorizing the Forest
Service to regulate Waldo Lake as a component of a wilderness
system or recreation area.  As expressly noted in Hells Canyon:

> 16 U.S.C. § 551 gives the Secretary of
> Agriculture the authority to regulate the use
> and occupancy of the national forests.  This
> authority is assimilated into 16 U.S.C. §
> 1281(d), giving the Secretary the authority
> to regulate the use and occupancy of
> components of the Wild and Scenic Rivers
> System.  The portion of the Snake River
> involved in this dispute is a component of
> this System.  16 U.S.C. § 1274(a)(12). §
> 1281(a) of the Wild and Scenic Rivers System
> Act illustrates the recurring motivation of
> Congress by giving the Secretary a clear
> instruction regarding the administration of
> his regulatory power.

660 F.2d at 738-739.

Congress has not made such a delegation here.  In fact, in
the Oregon Wilderness Act, Congress if anything has expressed an
intent to not exercise Property Clause power over Waldo Lake if
indeed it is the property of Oregon:

> Congress does not intend that designation of
> wilderness areas in the State of Oregon lead
> to the creation of protective perimeters or
> buffer zones around each wilderness area.
> The fact that nonwilderness activities or
> uses can be seen or heard from the areas
> within the wilderness shall not, of itself,
> preclude such activities or uses up to the
> boundary of the wilderness area.

22 - FINDINGS AND RECOMMENDATION.

98 Stat. 272 §6 (Oregon Wilderness Act)(1984).

Thus, on the record before the court, the Property Clause does not salvage the jurisdiction of the Forest Service to promulgate Amendment 47.

**5.     Does 16 U.S.C. § 1609(a) provide a basis for jurisdiction to regulate Waldo Lake as "other lands, waters or interests therein which are administered by the Forest Service"?**

Defendant-Intervenor McKenzie Flyfishers contends that 1609(a)'s language is broad enough to support Forest Service jurisdiction to regulate Waldo Lake even if it is state-owned as it would constitute "other waters" being administered by the Forest Service.

No caselaw supports this argument and the government does not join in this interpretation of the statute.  I find that the "other waters" language cannot be read as broadly as advocated by defendant-intervenor, and that this language is modified by the first clause of 1609(a), which states:

> Congress declares that the National Forest
> System consists of units of <u>federally owned</u>
> <u>forest</u>, <u>range</u>, <u>and</u> <u>related</u> <u>lands</u>  throughout
> the United States and its territories ....

<u>Id.</u> (emphasis added).  Accordingly, §1609(a) does not provide a basis to regulate Waldo Lake if it is not federally owned.

**CONCLUSION**

Plaintiff Stewart's motion (#85) for summary judgment on Count 1 (APA claim) should be allowed in part as follows:  the Court should find that the Forest Service action in adopting Amendment 47 was arbitrary and capricious in that the agency failed to conduct a factual inquiry into whether Waldo Lake was navigable at the time the State of Oregon entered the Union but instead relied on an irrebutable presumption of non-navigability which is irrational.  The motion should be denied to the extent it seeks a judicial ruling that Oregon has title to Waldo Lake. Plaintiff-Intervenor Columbia Seaplanes Pilots Association's joinder(#90) of plaintiff's motion for summary judgment should be allowed and denied in the same manner as plaintiff Stewart's motion.

Defendant United States' cross-motion(#107) for summary judgment on Count 1 should be granted in part and denied in part as follows:  the Court should find that the issue of which sovereignty owns Waldo Lake is properly cognizable only in a Quiet Title Action; the motion should be denied, however, insofar as it seeks a ruling that the Forest Service's policy or presumption of non-navigability is a sufficient basis on which to assert jurisdiction to adopt Amendment 47 and/or a ruling that the Property Clause provides such a basis for jurisdiction. Defendant-Intervenor McKenzie Flyfishers' motion (#113) for summary judgment on Count 1 should be denied.

24 - FINDINGS AND RECOMMENDATION.

All claims other than the APA claim should be dismissed as abandoned and all other motions should be denied as moot.


DATED this 20th day of May, 2009.

_____

Thomas Coffin

United States Magistrate Judge